IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LABORERS' LOCAL UNION NOS. 472 & 172, et al.,<br><br>    Petitioners,<br><br>    v.<br><br>TRI-STATE EROSION CONTROL, INC.,<br><br>    Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 17-1792 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

    This dispute comes before the Court by way of the motion of Petitioners Laborers' Local Union Nos. 472 & 172, Laborers' Local Union Nos. 472 & 172 Welfare and Pension Funds and Safety, Education and Training Funds, and Zazzali, Fagella, Nowak, Kleinbaum & Friedman, P.A.'s (hereinafter, "Petitioners") to confirm an arbitration award entered on March 8, 2017 as a result of Tri-State Erosion Control, Inc.'s (hereinafter, "Respondent") failure to remit fringe benefit contributions [Docket Item 2]; and by way of Respondent's cross-motion to vacate the same arbitration award. [Docket Item 9.]

    For the reasons that follow, Petitioners' motion will be granted, and Respondent's cross-motion will be denied. The Court finds as follows:

1. **Factual and Procedural Background.** In their Verified Petition, Petitioners generally allege that Laborers' Local Union Nos. 472 & 172 (hereinafter, the "Union") and Respondent are parties to a written collective bargaining agreement (hereinafter, the "CBA") that requires, in relevant part, Respondent to remit certain fringe benefit contributions and that it resolve any dispute regarding payment of these contributions in arbitration. [Docket Item 1 at ¶¶ 2-3; Docket Item 16 at 1; see also Docket Item 9, Exhibit F at 79.]

2. Under the CBA, Respondent recognized the Union "as the sole and exclusive collective bargaining representative for all employees employed by [Respondent] engaged in all work of any description whatsoever concerning the clearing, excavating, filling, back-filling and landscaping of all sites. . . ." [Id. at 7.] Several other duties to be performed by the Union were also listed as "covered" by the CBA. [Id. at 7-11.] The parties "agreed that all work described in [the CBA] or in the Manual of the Jurisdiction shall be performed only by employees covered by this Agreement." [Id. at 11.]

3. The CBA provided that Respondent would contribute to the Unions' Welfare Fund (Article 33), Pension Fund (Article 34), Safety, Education and Training Fund (Article 35), Annuity Fund (Article 36), and Vacation Fund (Article 37), on behalf of "each employee covered by [the CBA]." [Id. at 65-73.]

4. Of note, the CBA also included an arbitration clause, which provided, in relevant part:

> In the event that the Union, an Employer or the Fund's Trustees allege any dispute, violation or grievance concerning any provision of . . . Article 32 through 38 . . . , the dispute, grievance or violation including disputes over delinquencies, shall be submitted to the permanent arbitrator or arbitrators established by the Employer and Employee Trustees.

[Id. at 79.] The arbitration clause further provided that, "Any dispute in connection with the arbitratability of a matter shall be resolved by the arbitrator." [Id.]

5. Petitioners performed an audit of Respondent's payroll records for the time period between September 14, 2013 and August 31, 2015 (hereinafter, the "Audit"). [Docket Item 9, Exhibit E at 2.] An initial audit revealed a delinquency of $178,243.03, but, after further evidence was provided by Respondent, the total amount owed was adjusted downward to $172,419.47. [Id.] Notably, the Audit did not account for $39,146.99 that Petitioners had received from General Contractors for work performed by Respondent, but which was maintained "on account." [Id.]

6. After the Audit was completed and Respondent refused to pay the delinquent contributions, Petitioners moved for arbitration and requested that the arbitrator issue an award supporting the Audit findings and ordering Respondent to remit

the delinquent contributions, plus interest, fees, costs and damages. [Id.]

7. On May 18, 2016, the arbitrator held a hearing, which both parties attended. [Id. at 1.] During the hearing, Respondent argued: (1) that it terminated the CBA on January 24, 2013 (effective February 28, 2014) and that it was, therefore, not responsible for remitting any fringe benefits after February 28, 2014; Respondent acknowledged that it employed union workers after February 28, 2014, withheld union dues, paid union wages, and paid fringe benefits to the Funds on some occasions that were required by the CBA; (2) $45,978.87 of the delinquency amount identified in the Audit was attributable to work performed outside the territorial jurisdiction of the Union (and therefore not covered by the CBA); (3) that Respondent should not be required to pay $31,515.89 in fringe benefits for "non-covered work" performed by Union employees during "winter months;" and (4) that two missing checks totaling $10,547.79, which were referenced in a July 2016 email exchange, should also be credited to the amount owed to Petitioners. [Id. at 2-3, 8.] For these reasons, Respondent argued that it only owed $17,647.38, rather than the $172,419.47 identified by the Audit. [Id. at 3.]

8. On March 8, 2017, the arbitrator issued a written decision. **First**, the auditor determined that, regardless of the

4

effective "termination" date of the CBA, Respondent was bound under the CBA for any "bargaining unit work" (i.e., "covered work"), including "covered work" performed after February 28, 2014. [Id. at 5, 8.] **Second**, the auditor accepted Respondent's documentary evidence that certain work had been performed out of state and credited Respondent $45,978.87 for the out-of-state work. [Id. at 8.] Additionally, the auditor credited Respondent the $39,146.99 that had been maintained by Petitioners' "on account." [Id.] Together, these credited payments reduced the delinquency amount from $172,419.47 to $87,293.61. [Id.] **Third**, the arbitrator determined that affidavits provided by Respondent asserting that Union workers had performed 1,192 hours of mechanical maintenance work on vehicles during "winter months" between September 2013 and December 2014 were "not credible." [Id.] **Fourth**, the arbitrator found that Respondent failed to produce any physical evidence of the two missing checks. [Id.] "[B]ased on a lack of credible and/or reliable evidence," the arbitrator refused to credit Respondent either the $31,624.33 for "non-covered work" performed during the "winter months" or the $10,547.79 for the missing checks. [Id.]

9. Ultimately, the arbitrator awarded Petitioners delinquent contributions in the amount of $87,293.61; interest in the amount of $18,622.64; attorneys' fees in the amount of $17,458.72; and arbitrator's costs of $5,000.00. [Id. at 8-9.]

5

In total, the arbitrator ordered Respondent to pay Petitioners $128,374.97. [Id. at 9.]

10. Petitioners filed a motion to confirm the arbitration award in this Court. [Docket Item 2.] Respondent filed a brief in opposition [Docket Item 8] and cross-motion to vacate the arbitration award. [Docket Item 9.] Petitioners filed an opposition to Respondent's cross-motion [Docket Item 16] and Respondent filed its reply brief. [Docket Item 19.] The Court heard oral argument on November 20, 2017.

11. **Standard of Review.** Review of an arbitration award is extremely limited and conducted under a highly deferential standard. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987). Indeed, a court's "role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by an arbitrator." Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004). Rather, an arbitration award may be vacated only in the "exceedingly narrow" circumstances specified under the Federal Arbitration Act, 9 U.S.C. § 10(a) (hereinafter, the "FAA"), and "courts accord arbitration decisions exceptional deference." Handley v. Chase Bank USA NA, 387 Fed. App'x 166, 168 (3d Cir. 2010) (citing Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)).

12. The FAA provides, in relevant part, four exclusive grounds upon which arbitration awards can be vacated. See 9 U.S.C. § 10(a). These limited grounds include circumstances:

> (1) "[W]here the award was procured by corruption, fraud, or undue means;"
>
> (2) "[W]here there was evident partiality or corruption in the arbitrators, or either of them;"
>
> (3) "[W]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" and/or
>
> (4) "[W]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Id.

13. In addition to the four statutory bases for vacating an arbitration award under the FAA, the Third Circuit has recognized two common law grounds for vacatur. First, an arbitration award may be set aside if the arbitrator demonstrates "manifest disregard for the CBA," which "is established when the arbitrator's award is totally unsupported by principles of contract construction." Major League Umpires Ass'n, 357 F.3d at 280 (internal citation and quotation marks omitted). "In order to vacate an arbitration award on such grounds, there must be absolutely nothing in the record to

justify the arbitrator's decision." Jones v. Intarome Fragrance Corp., 2007 WL 1296656, at *3 (D.N.J. Apr. 27, 2017). Second, an arbitration award may be set aside if the arbitral award is "completely irrational." Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd., 868 F.2d 52, 56 (3d Cir. 1989) (internal citation and quotation marks omitted).

14.  **Discussion.** Here, Respondent does not argue that the arbitration award should be vacated for any of the first three grounds permitted under the FAA. Rather, Respondent relies entirely upon the last FAA ground and the two common law bases for vacatur recognized by the Third Circuit. For the following reasons, the Court finds Respondent's position is without merit, and will confirm the arbitration award.

15.  In essence, Respondent contends that judgment should not be entered on the arbitration award because the arbitrator's decision "is arbitrary and capricious and goes outside the four corners of the CBA." [Docket Item 9 at 1.] Specifically, Respondent argues "[t]he arbitrator not only exceeded his power in that the Award disregards the documents produced by [Respondent] that show that the CBA Agreement was terminated, and confirmed by counsel for [Petitioner], but also included benefits in his Award that went beyond that termination date of the CBA." [Id.] By simply restating arguments previously raised

8

before the arbitrator, however, Respondent fails to satisfy its "heavy burden." Handley, 387 Fed. App'x at 168.

16. As discussed supra, the arbitrator considered evidence presented by both parties during a hearing held on May 18, 2016. That evidence included, inter alia, the CBA, various affidavits asserting that Union workers performed certain "non-covered work" during the "winter months," and an email exchange referring to the two missing checks. [Docket Item 9, Exhibit E at 8.] Based on its interpretation of the CBA and evaluation of all the evidence, the arbitrator determined that some of the evidence, including the affidavits and emails about missing checks, was either not credible or unsupported. [Id.] Importantly, the arbitrator heard the very same arguments Respondent now makes before this Court, including the argument that the CBA was not enforceable after February 28, 2014 and the argument that Respondent should be exempt from remitting fringe benefits for "non-covered work" performed during "winter months." [Id. at 2-3.] The arbitrator considered and rejected those arguments. [Id. at 5-6.]

17. The arbitrator's decision to award benefits for work performed after the February 28, 2014 termination of the CBA is not irrational. First, the parties conferred upon the arbitrator the power to determine arbitrability – that is, the existence of the contract containing the arbitration provision and its

9

coverage of the dispute at hand. [CBA at 79, supra.] Whether the parties continued to perform under the CBA despite its purported termination was a question of arbitrability for the arbitrator to determine. Second, the arbitrator was free to determine whether the work performed and wages and benefits paid after February 28, 2014 were pursuant to mutual continuing obligations undertaken by the course of conduct of the parties, such as Respondent's continued payment of the CBA's wages and fringe benefits and withholding of union dues. Third, the arbitrator was empowered to make sense of the fact that Respondent continued to pay wages and fringe benefits consistent with the CBA, and that the union's members continued to perform work, as if the CBA continued to govern their relationship after February 28, 2014. Fourth, the arbitrator was free to reject Respondent's argument that it paid its union workers in accordance with the CBA scale because that was required by the Davis-Bacon Act or by state prevailing wage statutes. In short, the parties entrusted these determinations to be made by the arbitrator and there is no FAA exception or other common law basis to set aside his determination of post-February 28, 2014 benefits.

18. Likewise, this Court's limited authority to review an arbitration award is not properly invoked on the determination of "non-covered work" during "winter months." In finding certain affidavits of the workers to be incredible, and thus undermining

Respondent's position about winter works, the arbitrator did not owe more of an explanation. Respondent has cited to no case rejecting an arbitrator's credibility determination. Similarly, whether the winter work was "covered" required interpretation of the contract, a matter solely within the arbitrator's domain by agreement of the parties. Again, it is not irrational for the arbitrator to reject Respondent's argument that the sort of motor vehicle maintenance being performed in winter was beyond the scope of work covered by the CBA.

19. Here, two sophisticated parties negotiated a 95-page CBA, which included, among other things, a clear and unambiguous arbitration clause. As the Supreme Court has made plain, when there is a clear and unambiguous arbitration clause contained in a collective bargaining agreement:

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

<u>United Steelworkers of America v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593, 599 (1960). Simply, it is not the province of a district court to second-guess the findings of an arbitrator in the circumstances presented here.

20. Overall, Respondent has asserted that the arbitrator's 9-page award, including findings, was too terse; it fails to

explain the arbitrator's logic and findings in sufficient detail and leaves the reader to speculate why the arbitrator ruled as he did regarding post-February 28, 2014 fringe benefits and the "winter months" work. Respondent, however, cites to no precedent for raising the bar for an arbitrator's award – no provision of the CBA specifies the form or level of detail required of an arbitrator's opinion and award. No precedent elevates an arbitrator's writing requirement to resemble a court opinion; indeed, the informality of arbitration, including its lack of requirement for specific findings of fact and conclusions of law, would be harmed by requiring a more detailed statement of reasons and findings.

21. Precedent is clear that the FAA contains no requirement that an arbitrator explain his or her reasoning for an award. Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1215 (2d Cir. 1972) (citing Wilko v. Swan, 346 U.S. 427, 436 (1953), and Bernhardt v. Polygraphic Co., 350 U.S. 198, 203 (1956)); see also Sargent v. Paine Webber Jackson & Curtis, Inc. 882 F.2d 529, 532 (D.C. Cir. 1989); O.R. Sec. Inc. v. Prof'l Planning Assoc., 857 F.2d 742, 747 (11th Cir. 1988); Owen-Williams v. BB&T Inv. Servs., 717 F. Supp. 2d 1, 19 (D.D.C. 2010); Reichman v. Creative Real Estate Consultants, Inc., 476 F. Supp. 1276, 1282 (S.D.N.Y. 1979). In this regard, an arbitrator's award may be vacated if it is shown that the arbitrator "so imperfectly

executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In the present case, each matter presented to the arbitrator was heard and considered and decided in a "mutual, final, and definitive award," even if only minimal reasoning was articulated.

22. Likewise, Respondent suggests that the Court should take a harder look at the award of a "permanent" arbitrator, as in this case. To that end, at oral argument Respondent argued for broader review and less deference to a permanently-assigned arbitrator who handles disputes under this CBA. Again, there is no support in case law for prescribing a more searching review. Respondent has not argued that this arbitrator has exhibited pro-union bias, nor that there is some sort of questionable relationship between him and Petitioners. Absent allegations that there is some sort of fraud, bias, or misconduct by the arbitrator, this Court applies the well-settled principles of narrow judicial review of an arbitrator's award. There is nothing inherently troublesome in utilizing services of an arbitrator who is familiar with the CBA and handles such disputes, and who is not alleged to have exhibited "evident partiality or corruption" performing duties under the arbitration agreement. 9 U.S.C. § 10(a)(2).

23. Based on the record before the Court, the undersigned does not find that the arbitrator "exceeded [his] powers" or demonstrated "manifest disregard for the CBA," or that the arbitral award was "completely irrational." Accordingly, the Court will uphold the arbitrator's award.

24. **Conclusion.** For the foregoing reasons, the Petitioners' motion will be granted and the Respondent's cross-motion will be denied. An accompanying Order shall be entered.


**November 21, 2017**           **s/ Jerome B. Simandle**
Date          JEROME B. SIMANDLE
         U.S. District Judge